## Richmond

HOWARD N. ROBERTS AND J. E. ROBERTS v. C. C. YANCEY.

January 20, 1969.

Record No. 6802.

Present, All the Justices.

*James W. Blanks* (*Thomas J. Russell,* on brief), for plaintiffs in error.

*Frank M. Slayton; Jesse R. Overstreet, Jr. (Easley, Vaughan and Slayton,* on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

C. C. Yancey, the plaintiff, filed a motion for judgment against Howard N. Roberts and J. E. Roberts, the defendants, seeking to recover damages for injuries allegedly caused by the defendants to premises located in Clarksville, Virginia, and leased by the plaintiff to the defendants. Then, in the same proceeding, the plaintiff filed

a petition for an injunction praying that the defendants be restrained from removing "permanent improvements, fixtures and attachments from the premises."

The trial court entered a decree temporarily restraining the defendants from removing "any plumbing fixtures, hot water heaters, shower stalls, walls, panelling, ceilings, *comodes*, wiring, lighting fixtures, heating and cooling systems from the building owned by the Petitioner."

The issues raised by the motion for judgment, which related to the first floor of the leased premises, were submitted to a jury, and it returned a verdict in favor of the plaintiff in the sum of $2500.00. The issues raised by the petition for injunction, which related to the second floor of the premises, were submitted to the court, and it ruled that the defendants were not entitled to remove certain fixtures from the second floor. A "Judgment Order" was entered affirming the jury's verdict and decreeing that the "injunction be . . . made permanent." The defendants were granted a writ of error.

The evidence shows that in 1943, the plaintiff rented the first floor of the premises in question to S. W. Gill, who conducted a restaurant business therein. Gill in turn sold the restaurant business to the defendant J. E. Roberts, who was joined in the enterprise by his son G. T. Roberts. The defendant Howard N. Roberts later purchased the interest of his brother G. T. Roberts in the business and took over management of the venture.

Thereafter, by a series of written agreements, the plaintiff leased both the first and second floors of the premises to the defendants. The first floor continued to be used by the defendants for operation of their restaurant business. The second floor was used at first for the rental of individual rooms but later was converted into apart-ments, which the defendants rented out.

The last written agreement entered into by the parties was dated October 26, 1960. In that agreement, the plaintiff leased both floors of the premises to the defendants for a term of five years, commencing September 3, 1961.

In the latter part of May, 1966, several months before the five-year term provided for in the last agreement was due to terminate, the defendants moved their restaurant business to a new building. They removed from the first floor of the leased premises booths, stools, sinks, dishwashers, refrigerators, and other items of equipment used by them in their restaurant business. They also removed

from the first floor electric lighting fixtures, paneling and sheetrock nailed to the walls, and canopies or false ceilings constructed above the booths along each side of the dining room and above the bar. The lighting fixtures and some of the paneling were used in the defendants' new building, but the rest of the removed wall and ceiling materials were thrown away. The defendants were preparing to remove various items of property from the second floor but were prevented from doing so by the court's temporary injunction.

## The First Floor

At the outset, it should be stated that the first floor controversy does not involve the removal of the booths, stools, sinks, dishwashers, refrigerators, and other items of equipment used by the defendants in their restaurant business. The plaintiff concedes that those items were trade fixtures properly removable by the defendants. What is involved is the removal of the lighting fixtures, paneling and sheetrock, and canopies or false ceilings. Also involved is the condition in which the premises were left after the defendants' vacation thereof.

The defendants originally assigned sixteen errors to the actions of the trial court with respect to the jury trial involving the issues relating to the first floor of the leased premises. However, in oral argument before us, the defendants relied upon only three grounds to support their claim that the jury's verdict should have been set aside by the trial court. Those grounds are as follows:

1. The lighting fixtures, paneling and sheetrock, and canopies or false ceilings were, as a matter of law, trade fixtures which the defendants were entitled to remove.

2. The error of the court in granting, at the request of the plaintiff, instructions 1, 2,[1] and 3.

3. The failure of the plaintiff to prove his monetary damages.

The various leases between the parties were silent on the question of the defendants' right to remove property installed by them in the restaurant portion of the building. The evidence was in almost hopeless conflict as to who installed what in the premises. Gill, who preceded the defendants as a tenant, testified that he made certain

---

[1] Instructions 1 and 2 defined waste and prescribed the liability of a tenant therefor. The record contains no objections or exceptions to the granting of these instructions, and so they will not be considered further. Rule 1:8, Rules of Court.

improvements to the ceiling and walls of the restaurant during his stay in the premises. The plaintiff insisted that he installed certain improvements in the building. The defendants, while admitting that the plaintiff had made improvements from time to time which brought about increases in the amounts of rental, claimed that they did some of the same work which Gill and the plaintiff said they had done.

The evidence showed without contradiction, however, that the lighting fixtures removed by the defendants upon their vacation of the premises were replacements of others already installed when the defendants took possession and that when the new fixtures were removed, the bare electric wires were left hanging from the ceiling and walls. Under these circumstances, the lighting fixtures were not properly removable by the defendants. 2 Tiffany, Real Property § 621, p. 607, at 608 (3d ed. 1939).

There was evidence that Gill or the plaintiff had installed celotex on the ceiling and sheetrock and plywood paneling on the walls. It is clear, however, that the actual paneling and canopies or false ceilings removed when the defendants vacated the premises were installed by them at their expense during a remodeling of the restaurant undertaken in 1961, after commencement of the term provided for in the last lease.

But it is just as clear that the paneling and the canopies or false ceilings were installed permanently in the building and so attached as to become a part thereof. The evidence showed without dispute that the paneling was nailed to wooden strips which were nailed to the sheetrock which was in turn nailed to the wooden walls. The canopies or false ceilings were constructed of wooden 2 x 4's nailed to the walls and ceiling, covered on the exposed vertical sides with paneling and on the exposed undersides with celotex.

The evidence further showed that in the removal of the paneling and sheetrock and the canopies or false ceilings, the structure to which they were attached was materially damaged. And the evidence showed that when the premises were vacated, they were left in a condition aptly described in the plaintiff's brief as "truly foul."

Instruction 3, as the defendants interpret it in their brief, told the jury that if the defendants made certain improvements which were firmly attached to the building so as to become a part thereof and which could not be removed without material injury to the freehold, then the plaintiff was entitled to the improved value of

the building even though it might result in returning the building to the plaintiff in better condition than it was when received by the defendants. The instruction also told the jury that if the defendants removed any such improvements and caused material injury to the freehold, then the plaintiff was entitled to compensation "for the damages done to his building by such removal."

In light of the evidence which has been recited, we are of opinion that the trial court did not commit reversible error in granting instruction 3 or in refusing to rule, in denying the defendants' motion to set the jury's verdict aside, that the defendants were, as a matter of law, entitled to remove the lighting fixtures, paneling and sheetrock, and canopies or false ceilings from the premises.

■ The defendants' final contention with respect to the jury trial is that the plaintiff did not prove his monetary damages.

The assignment of error relating to this contention is that the trial court erred in refusing to strike the evidence of C. H. Newton, a witness who appeared on behalf of the plaintiff and testified as to the cost of performing repair work on the premises. We find in the record no motion to strike Newton's testimony. The defendants did object to a portion of the testimony of Newton about the replacement of some "plumbing in the kitchen" on the ground that the witness did not have "an itemized list" of the estimated cost of such plumbing work. However, the defendants made no response when the trial court remarked, "We'll straighten these things out, I mean after—," and the witness was permitted to continue with his testimony without further objection.

In addition to the testimony of Newton, the plaintiff produced A. S. Tuck as a witness. There is in the record a written statement made by Tuck, admitted into evidence as an exhibit, estimating the cost of "repair of Old Roberts Grill" to be $6280.00.

The members of the jury, by agreement of the parties, were permitted to view the premises in the condition in which they were left by the defendants. Thus, the members of the jury were provided additional means by which to determine the weight to be accorded the testimony of Newton and the estimate made by Tuck.

Under these circumstances, we cannot say that there was not sufficient proof of the plaintiff's monetary damages to support the jury's award of $2500.00.

## The Second Floor

The evidence concerning the second floor of the leased premises was heard by the trial court after conclusion of the jury trial just discussed. The evidence showed that sometime after the defendants leased the second floor in 1946, the plaintiff, at their request, divided the area into individual rooms, which the defendants rented out. Sometime later, when the defendants determined that the renting of the individual rooms was no longer profitable, they converted the area into three apartments. They used the existing lighting fixtures, but installed at their expense the other items of property which they were preparing to remove when prevented from doing so by the trial court's injunction. As listed in the injunction, the second floor dispute involved "plumbing fixtures, hot water heaters, shower stalls, walls, panelling, ceilings, *comodes*, wiring, lighting fixtures, heating and cooling systems." [2]

The defendants rely on the same argument here as was advanced with regard to the disputed property removed from the first floor, that is, that the items involved on the second floor were, as a matter of law, trade fixtures which they were entitled to remove. They concede, however, that if the trial court properly submitted to the jury the issue of the nature of the improvements on the first floor, then the court was correct in deciding that the items involved in the second phase of the case were not trade fixtures. Since we have held that the court did not err in the submission of that issue to the jury, the defendants' concession becomes conclusive against them.

Additionally, the defendants contend that the court erred in limiting its consideration of the case to the last lease, entered into by the parties on October 26, 1960, which lease contained no provision concerning the removal of property from the second floor by the defendants. The defendants say that the 1960 lease was but a renewal of a lease entered into in 1956 and that the earlier lease gave them the right to remove the property in question, even though not trade fixtures, which right the court should have recognized and respected.

The 1956 lease contained a provision permitting removal by the

---

[2] The "cooling systems" referred to in the court's decree apparently consisted of window units attached to the building only by electric wires plugged into wall outlets. There is now no dispute between the parties over those units.

defendants from the second floor of "fixtures furnished by them" provided such removal did not "injure the real estate."

The record does not support the defendants' contention that the court limited its consideration of the case to the last lease, entered into in 1960. The record discloses that apparently all the leases involved were admitted into evidence in both phases of the proceeding and were considered by the court and jury in the first phase and by the court alone in the second phase.

In a letter opinion to counsel conveying its decision with respect to the second floor dispute, the trial court made specific reference to the provision of the 1956 lease relating to the defendants' right of removal of property from the second floor. The court based its decision that the disputed property should not be removed upon the very provision of the 1956 lease that such removal was not permissible if it would "injure the real estate."

The court in its letter opinion ruled that the removal of the property would damage the building. The defendants argue that there was no evidence to support that ruling. However, the trial court heard extensive testimony concerning the nature of the improvements made in the second floor area and the manner in which the various items of property were installed. In addition, the trial court took a view of the second floor premises. We cannot say, therefore, that the court was not justified in its finding that removal of the improvements would damage the building to which they were attached.

The defendants have pointed to no error requiring us to disturb the rulings of the trial court with respect to either phase of the case. Accordingly, the "Judgment Order" appealed from will be affirmed.

*Affirmed.*